IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| GEORGE E. RAY, | : | CIVIL ACTION |
| | : | NO. 05-2507 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FEDERAL INSURANCE COMPANY AND | : | |
| CHUBB GROUP OF INSURANCE | : | |
| COMPANIES, | : | |
| | : | |
| Defendant. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                        MAY 10, 2007

        Plaintiff George E. Ray filed this pro se complaint against
defendants Federal Insurance Company and Chubb Group Insurance
Companies ("Federal") based on Federal's denial of Ray's total
disability benefits.  Ray argues that his disability is caused by
his fall down the stairs; Federal argues that the disability is
caused, at least in part, by Ray's degenerative medical
condition, spondylotic cervical myelopathy.

        Ray alleges that Federal breached its contract with Ray by
not providing him with disability benefits.  Federal argues that
it did not breach the contract because the contract provided
coverage only for "accidents" that are the "direct" cause of the

disability, and that the contract specifically excluded from coverage disabilities resulting from disease or illness.

Federal has moved for summary judgment.[1]  For the reasons that follow, Federal's motion will be granted.

I.  BACKGROUND

    A.  Factual History

    Ray entered into an insurance contract with Federal whereby Federal would provide coverage for Ray for "accidental disabilities."  Coverage was effective June 1, 2002.  A copy of the insurance plan is attached to Federal's motion as Exhibit B.

    The plan provides for payment of total disability benefits if "accidental bodily injury causes the primary insured person to have a permanent total disability."  Certificate of Insurance Declarations § IV.  The plan provides coverage only for an "accidental bodily injury," which is defined as "bodily injury, which is accidental and the direct cause of a loss."  Certificate of Insurance Contract § VI.  "Accident or accidental" is in turn

_____

[1] First, Federal moved for summary judgment (doc. no. 46). Second, Ray responded (doc. no. 48).  (This document is titled "Plaintiff's supplement to existing motion for summary judgment.")  Third, Federal filed a reply brief (doc. no. 49). Fourth, Ray sur-responded (doc. nos. 51, 52).  (This sur-response is actually two letters to the Court in response to Federal's brief.)  Fifth, Federal filed a sur-reply (doc. no. 53).  (This document is titled a "second sur-reply brief," but it is actually a sur-reply brief.)  Sixth, and finally, Ray filed a sur-sur-response (doc. no. 54).  (This document is titled "petition for judicial notice.")

defined as "a sudden, unforseen, and unexpected event which
happens by chance, arises from a source external to the injured
person, is independent of illness, disease or other bodily
malfunction and is the direct cause of loss."  Certificate of
Insurance Contract § VI.  In addition, the plan specifically
excludes from permanent total disability coverage "disease or
illness": "This insurance does not apply to loss caused or
resulting from an insured person's emotional trauma, mental or
physical illness, disease, pregnancy, childbirth or miscarriage,
bacterial or viral infection, or bodily malfunctions."
Certificate of Insurance Contract § V.

    Essentially, to receive benefits under the insurance
contract, Ray must show (1) that he had an accident, (2) that he
has a disability, and (3) that the accident was the "direct"
cause of the disability.  The first two prongs are not contested:
(1) Federal assumes arguendo that Ray did fall down the stairs
and (2) although Ray has not spelled out his specific disability,
his complaint states that he has "permanent nerve damage" and the
medical exhibits suggest that he has reduced usage of his limbs
and extremities.  Federal bases its argument on the third prong,
that the fall down the stairs cannot be the "direct" cause of the
disability, because the disability is caused, at least in part,
by Ray's degenerative medical condition.

Ray alleges that, on February 1, 2004, he slipped and fell down his basement stairs.  Pl.'s Depo. at 96-101.  After his fall, Ray's first encounter with professional medical care was on February 26, 2004, when he went to Temple University Hospital.  Doc. No. 46, Ex. C, at 13; Pl.'s Depo. at 104.  According to the admitting nurse's screening sheet, Ray stated his reason for admission was "because my hands are weak and no feeling," and that he answered "no" to the question "Have you had a recent fall or do you need to hold on to things in order to keep your balance?".  Doc. No. 46, Ex. C, at 13, 14.

The hospital's "general history and physical examination" sheet, completed on February 26, 2004, indicates that Ray's "chief complaint" is "progressive weakness and numbness of hands and feet," and that his "history of present illness" is that the "problem started 9 months ago when he felt that his right hand is getting numb, and cannot feel objects in his hand."  Doc. No. 46, Ex. C, at 1.

On March 11, 2004, at Temple University Hospital, Dr. Devanand A. Dominique performed a surgery (a C3 through C7 laminoplasty) on Ray.  Doc. No. 46, Ex. C, at 10.  Dr. Dominique's notes indicate that Ray had spondylotic cervical myelopathy, and that the surgery was performed to alleviate Ray's symptoms from the condition.  Id.

4

Federal has pointed to the notes from Ray's primary care physician, Dr. Francis Hunter, that seem to indicate that Ray had similar mobility problems prior to his February 1, 2004, fall. Over the course of four visits in 2003, Dr. Hunter's handwritten notes report:

> [July 9, 2003:] [P]ast 5-6 weeks patient has been having numbness in both hands and weakness in right leg and right arm gets weak off and on.  Patient states it started around 6 months ago and has gotten gradually worse.
> [July 30, 2003:]  [S]till with some paresthesias; decreased strength in right upper and lower extremities.
> [August 27, 2003:]  [D]ecreased strength in his upper extremities.
> [September 24, 2003:]  [S]tiffness in his hands . . . .
> [S]ome neurological malfunction--needs neuro consult and CT of head, patient referred to City Clinic to be evaluated and get studies.

Doc. No. 46, Ex. E, at 1-3.


B.  <u>Procedural History</u>

This litigation, which at first blush looks like an ordinary insurance contract dispute, has proved to be quite contentious. Ray's pro se complaint, filed May 26, 2005, alleges that Federal, in addition to improperly denying Ray disability benefits, lied to the Pennsylvania Insurance Commission.  In over two dozen letters and motions sent to the Court, Ray alleges that Federal and its counsel engaged in several acts of misconduct, most

notably lying to Ray and to this Court.[2]

The issues in this case are obviously very personal to Ray, as he believes he is entitled to insurance payments from Federal to help him with his medical condition.  Unfortunately, Ray's emotions have seeped into his filings and other litigation-related activities, oftentimes overpowering his reasoning and legal arguments.  In fact, sentiments ran so high, Federal's deposition of Ray had to be conducted in front of a magistrate judge.  Ray's unfounded objections to some of Federal's discovery

_____

[2] Alleging defense misconduct, Ray moved for sanctions against Federal, alleging generally that Federal "lied," "falsified evidence," and violated the Court-imposed deadlines for producing discovery and filing certain motions  (doc. no. 45).  Federal filed a detailed response (doc. no. 47).

The crux of Ray's motion for sanctions is that counsel for Federal committed forgery when he sent Temple University Hospital a subpoena that was issued by this Court.  Ray misunderstands, as a layman conceivably would, how a subpoena is "issued."  In a civil case such as this, an attorney for a party can obtain a blank subpoena from the Clerk of Court, fill in the details himself, and serve the subpoena on a third party.  Counsel did not commit forgery; rather, he followed the proper procedures.

Similarly, Ray alleges that counsel for Federal committed some sort of misrepresentation by presenting to Magistrate Judge Rueter a proposed order, which Judge Rueter then signed.  Ray argues, somewhat plausibly, that a judge signing an order presented to him by counsel is fundamentally unfair.  Again, though, this dispute stems from a misunderstanding of court procedures.  It is not only common practice for counsel to provide a judge with a copy of a proposed order, but to do so is actually required by the Court's local rules.  See Local R. Civ. P. 7.1(a).

After thoroughly investigating all of Ray's allegations of wrongdoing, the Court concludes that Ray's allegations have no merit.  Ray's motion for sanctions will be denied.

requests also precipitated detailed monitoring of this case by the Court.

In short, what should have been a simple case involving the "cause" of Ray's disability turned into an eighteen-month ordeal that explored tangential paths, sapped the time and energy of all parties (including the Court) involved, and resulted in unsubstantiated finger-pointing and allegations of wrongdoing. With this Memorandum, the case comes to a close.

II.  DISCUSSION

A.  Summary Judgment Standard

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id. at 248-49.  "In considering the evidence, the court should draw all reasonable inferences against the moving party."  El v. Se. Pa. Transp.

<u>Auth.</u>, 479 F.3d 232, 238 (3d Cir. 2007).

"The non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way." <u>El</u>, 479 F.3d at 238.  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." <u>Berckeley Inv. Group, Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006).

 Typically, courts grant pro se litigants some latitude in their pleadings. <u>Dluhos v. Strasberg</u>, 321 F.3d 365, 369 (3d Cir. 2003).  However, a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment.  "[M]erely because a non-moving party is proceeding pro se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." <u>Boykins v. Lucent Technologies, Inc.</u>, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (Robreno, J.).


  B.  <u>Application of the Summary Judgment Standard</u>

Accidental insurance policies, construed under Pennsylvania law, can be placed in two classes.  The first class is for

insurance policies that provide for disability benefits when an accident, external to the insured, is the direct cause of the disability.  The second class encompasses the first, and includes insurance policies with <u>additional</u> restrictions specifically <u>excluding</u> from coverage any disability caused directly or indirectly by physical illness or disease.  See <u>Cox v. Nw. Nat'l Life Ins. Co.</u>, 1990 WL 121225, at *2 (E.D. Pa. Aug. 14, 1990) (construing <u>Johnson v. Ky. Cent. Life & Accident Ins. Co.</u>, 18 A.2d 507, 511 (Pa. Super. Ct. 1941), and <u>Weiner v. Metro. Life Ins. Co.</u>, 416 F. Supp. 551, 553 (E.D. Pa. 1976)).  The insurance contract in this case falls into the latter class: it provides coverage only for "accidental" bodily injuries, and it specifically excludes coverage for bodily injuries caused by disease or illness.  In this situation, the plaintiff's burden is quite high:

> [I]t is not sufficient for the insured to establish a direct causal relation between the accident and the loss or disability.  He must show that the resulting condition was caused solely by external and accidental means, and if the proof points to a pre-existing infirmity or abnormality which may have been a contributing factor, the burden is upon him to produce further evidence to exclude that possibility.

<u>Lucas v. Metro. Life Ins. Co.</u>, 14 A.2d 85, 86 (Pa. 1940).

As the Third Circuit has held with respect to similar insurance policies for accidental deaths, when an insurance policy provides coverage for injury "caused solely through violent external and accidental means," <u>and</u> an "additional clause

precluding recovery if the death was caused directly or indirectly by disease," the insured "may recover only if [a] pre-existing disease did not contribute" to the injury.  Shiffler v. Equitable Life Assurance Soc'y of U.S., 838 F.2d 78, 84 (3d Cir. 1988).  The lesson from Cox, Lucas, and Shiffler is that the burden is on Ray to present evidence that his disability was caused "solely" by an accident and that a disease or medical condition did not contribute to the disability.

Federal has pointed to specific evidence that Ray's degenerative medical condition is at least contributing factor, if not the sole cause, of his disability.  The records from Temple University Hospital indicate that Ray was admitted because of weakness in his limbs, that he was diagnosed with spondylotic cervical myelopathy, and that he had surgery to relieve some of the disease's symptoms.  The records from Ray's personal physician, Dr. Hunter, further indicate that Ray was experiencing similar symptoms (consistent with spondylotic cervical myelopathy) in 2003, well before his alleged fall.

Once Federal put forth this evidence that Ray's disability was caused at least in part by Ray's spondylotic cervical myelopathy, Ray could survive summary judgment only by pointing to specific evidence in the record to support his contention that his disability was caused solely by his "accident," i.e. his fall down the stairs.  See Berckeley, 455 F.3d at 201.

10

Ray has not pointed to any evidence to support his claim.
He rests merely on his allegations and his refutations of
Federal's evidence.  Typically, a causation analysis requires
expert testimony.  See Albert v. Alter, 381 A.2d 459, 470 (Pa.
Super. Ct. 1977) ("[W]hen there is no obvious causal relationship
between the accident and the injury, unequivocal medical
testimony is necessary to establish the causal connection.").[3]
This holds true even for pro se litigants.  Moreover, in his
response to Federal's summary judgment motion, Ray points to the
report of an independent medical examination conducted by Dr.
Elizabeth Post, a neurosurgeon, on March 4, 2005, that refutes
his own arguments.  Doc. No. 48, at 2.  Dr. Post writes:

> Within a reasonable degree of medical certainty, Mr.
> Ray suffers from the effects of spondylotic cervical
> myelopathy, which is a progressive degenerative
> disease.  While this condition can be aggravated by
> falls, there is no evidence in the record that supports
> his version of the events that immediately preceded his
> hospitalization, and, in fact, there is evidence that
> his symptoms predated his admission by almost one year.

Doc. No. 7, Ex. 1.

In short, there is factual evidence to support Federal's
argument; there is no factual evidence to support Ray's argument.
Therefore, Federal is entitled to judgment as a matter of law.[4]

_____

[3] Albert and similar cases usually involve personal injury
or medical malpractice claims; nevertheless, the need for expert
testimony to demonstrate causation is also applicable in
insurance cases involving medical issues.

[4] Ray submitted two motions for summary judgment (doc. nos.
6 & 8), which were denied by the Court as premature (doc. nos. 27

11

III.  CONCLUSION

Federal is entitled to summary judgment on Ray's claim that Federal breached the insurance contract by not providing Ray with disability benefits.  An appropriate Order follows.

---

& 32).  To the extent that Ray's comments at oral argument constitute an "oral motion" for summary judgment under Rule 56, he has failed to show that he is entitled to judgment as a matter of law.  Ray's oral motion for summary judgment is therefore denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GEORGE E. RAY,                   :   CIVIL ACTION
                                 :   NO. 05-2507
          Plaintiff,             :
                                 :
     v.                          :
                                 :
FEDERAL INSURANCE COMPANY AND :
CHUBB GROUP OF INSURANCE         :
COMPANIES,                       :
                                 :
          Defendant.             :

**O R D E R**

**AND NOW**, this **10th** day of **May 2007**, after a hearing on the
record on May 8, 2007, for the reasons stated in the accompanying
Memorandum, it is hereby **ORDERED** that Defendant's motion for
summary judgment (doc. no. 46) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for sanctions
(doc. no. 45) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion for leave to
file a reply brief (doc. no. 49) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's motion for leave to
file a second sur-reply brief (doc. no. 53) is **GRANTED.**

**AND IT IS SO ORDERED.**

          S/Eduardo C. Robreno
          **EDUARDO C. ROBRENO, J.**

13